United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Streetspace, Inc.,<br><br>        Plaintiff,<br>  v.<br><br>Google Inc., et al.,<br><br>        Defendants. | NO. C 11-04574 JW<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL; GRANTING DEFENDANTS' MOTION TO STAY PROCEEDINGS; DENYING AS PREMATURE DEFENDANTS' MOTION TO DISMISS** |

Presently before the Court are Defendants' Motion to Stay Proceedings,[1] Defendants' Motion to Dismiss,[2] and Plaintiff's Motion to Disqualify Counsel.[3] The Court finds it appropriate to take the Motions under submission without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court DENIES Plaintiff's Motion to Disqualify Counsel, GRANTS Defendants' Motion to Stay Proceedings, and DENIES as premature Defendants' Motion to Dismiss, without prejudice to Defendants to re-file after the stay is lifted.

---

[1] (Defendants' Notice of Motion and Motion to Stay Proceedings Pending Reexamination of U.S. Patent No. 6,847,969, hereafter, "Motion to Stay," Docket Item No. 76.)

[2] (Memorandum in Support of Defendants' Rule 12(b)(6) Motion to Dismiss, hereafter, "Motion to Dismiss," Docket Item No. 49-1; see also Docket Item No. 78.)

[3] (Memorandum of Points and Authorities in Support of the Motion by Plaintiff Streetspace, Inc., to Disqualify Counsel for Defendant Millennial Media, hereafter, "Disqualification Motion," Docket Item No. 29-1; see also Docket Item No. 81.)

**A.     Background**

On August 23, 2010, Plaintiff Streetspace, Inc. ("Streetspace") filed a Complaint in the Southern District of California alleging that Defendants infringed U.S. Patent No. 6,847,969, entitled "Method and System for Providing Personalized Online Services and Advertisements in Public Spaces" ("the '969 Patent"). (See Docket Item No. 1.) On December 6, 2010, Plaintiff served Defendants for the first time. (See Docket Item No. 7.) On January 18, 2011, Defendants filed a Joint Motion to Dismiss or for a More Definite Statement. (See Docket Item No. 21.) On January 20, 2010, Defendants filed a Joint Motion for a Change of Venue, asking the court to transfer proceedings to the Northern District of California. (See Docket Item No. 23.)

On February 25, 2011, Plaintiff filed a First Amended Complaint.[4] On March 3, Judge Larry Burns issued an Order to Show Cause why Plaintiff's First Amended Complaint should not be stricken, as Plaintiff had not sought leave of the court before filing its Amended Complaint. (See Docket Item No. 35.) On March 4, 2011, Plaintiff responded and sought leave of the court to amend its Complaint. (See Docket Item No. 39.) On March 8, 2011, the court granted Plaintiff leave to file its Amended Complaint and denied Defendants' Motion to Dismiss as moot in light of the amendment. (See Docket Item No. 43.)

On March 22, 2011, Defendants filed their Motion to Dismiss. (See Docket Item No. 49.) On September 12, 2011, Judge Burns granted Defendants' Motion to Transfer Venue to the Northern District of California. (See Docket Item No. 57-1.) In light of the transfer, Judge Burns declined to rule on Defendants' Motion to Dismiss or Plaintiff's Motion to Disqualify Counsel. (Id. at 1.)

On September 15, 2011, a Request for Inter Partes Reexamination was filed with the United States Patent Office ("PTO") asserting that all claims of the '969 Patent are invalid.[5] On November 21, 2011, the request for reexamination was granted. (See id. at 2-3.) On November 21, in addition

---

[4] (First Amended Complaint for Patent Infringement, hereafter, "FAC," Docket Item No. 30.)

[5] (See Declaration of Shawn E. McDonald in Support of Defendants' Motion to Stay Proceedings Pending Reexamination of U.S. Patent No. 6,847,969, hereafter, "McDonald Decl.," Ex. A, Order Granting Request for Inter Partes Reexamination at 1, Docket Item No. 77-1.)

2

1 to granting the inter partes reexamination, the PTO also issued its first Office Action with regards to
2 the '969 patent and rejected all of its claims on grounds of obviousness in light of previously
3 undisclosed prior art.[6]

### B. Motion for Disqualification

At issue is whether Cooley LLP ("Cooley") should be disqualified from serving as counsel to Defendant Digital Millennial Media ("Millennial"). Plaintiff moves for disqualification on the ground that Cooley partner Chris Campbell ("Campbell") was a partner in the intellectual property group at Hunton & Williams ("Hunton") while Hunton prosecuted the '969 Patent on behalf of Streetspace.[7] Defendant Millennial responds that disqualification is unnecessary because Campbell never received any confidences regarding Streetspace or the patent at issue.[8]

"[I]f a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later join[s] another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict." Dieter v. Regents of Univ. of Cal., 963 F. Supp. 908, 911 (E.D. Cal. 1997) (citation omitted). "Instead, disqualification depends on a fact-based examination of the nature and extent of [the] [l]awyer's involvement with and exposure to [his previous firm's] earlier representation of [the] [c]lient and specifically whether confidential information material to the current lawsuit would have normally been imparted to [the] [l]awyer while at [the law firm]." Adams v. Aerojet-Gen. Corp., 86 Cal. App. 4th 1324, 1328 (Cal. Ct. App. 2001); see also Ochoa v. Fordel, Inc., 146 Cal. App. 4th 898, 907-09 (Cal. Ct. App. 2007). "In answering this question, the court should focus on the relationship, if any, between the attorney and the former client's representation." Adams, 86 Cal. App. 4th at 1340. It should consider "any time

---

[6] (McDonald Decl., Ex. B, Office Action in Inter Partes Reexamination at 3, hereafter, "Office Action," Docket Item No. 77-2.)

[7] (Disqualification Motion at 1.)

[8] (Millennial Media's Opposition to Streetspace's Motion to Disqualify at 10, hereafter, "Disqualification Opp'n," Docket Item No. 31.)

3

spent by the attorney working on behalf of the former client and the attorney's possible exposure to formulation of policy or strategy in matters relating to the current dispute." Id. (citation and quotation omitted). Where a substantial relationship exists between the former firm's representation of a client and the current litigation, the lawyer whose disqualification is sought bears the burden of proving that he had no exposure to confidential information. Id. at 1340-41.

Here, in support of its contention that Cooley should be disqualified, Plaintiff offers the following evidence:

> Testimony from Trevor Coddington ("Coddington"), current counsel for Plaintiff, that he became a patent agent at Hunton's Washington D.C. office in December of 2002.[9] Streetspace became a client of Hunton's in December of 2002 or January of 2003. (Id. ¶ 4.) During his tenure at Hunton, Coddington assisted Plaintiff with prosecution of the '969 Patent. (Id. ¶ 9.) Hunton began prosecuting the application for the 969 Patent in early 2003. (Id. ¶ 11.) Streetspace disengaged Hunton in March of 2005 and transferred its Hunton matters to Coddington at Paul Hastings when Coddington left Hunton. (Id. ¶ 4.)
> During the time that Steetspace was a client of Hunton, Campbell was a partner in Hunton's intellectual property group.[10] Campbell was one of four intellectual property partners in the McLean, Virginia Hunton office.[11] While Coddington was at Hunton he occasionally visited the Virginia office to support intellectual property partners on various patent matters. (Coddington Reply Decl. ¶ 2.) On at least one such visit Coddington reported directly to Campbell and prepared a memorandum for him on reverse engineering law. (Id. ¶ 3.)
> Hunton employed a centralized document management system in which attorneys and staff throughout its United States offices had computer access to all electronic documents stored in the system. (Coddington Decl. ¶ 15.) Streetspace documents were kept in Hunton's centralized document management system and included confidential information, attorney work-product, and privileged communications. (Id.) Campbell had access to the Streetspace documents in the centralized management system. (Id. ¶ 16.)

---

[9] (See Declaration of Trevor Q. Coddington in Support of the Motion by Plaintiff Streetspace, Inc. to Disqualify Counsel for Defendant Millennial Media ¶ 2, hereafter, "Coddington Decl.," Docket Item No. 29-2.)

[10] (Coddington Decl. ¶ 5.)

[11] (Reply Declaration of Trevor Q. Coddington in Support of Streetspace's Motion to Disqualify Counsel Defendant Millennial Media ¶ 6, hereafter, "Coddington Reply Decl.," Docket Item No. 40-1.) Plaintiff originally asserted that Campbell was a partner in Hunton's DC office. (See Coddington Decl. ¶ 5.) However, Plaintiff's reply brief and supporting materials appear to accept Campbell's assertion that he was based in Hunton's Virginia office.

4

Defendant Millennial, while not disputing that Coddington prosecuted the '969 Patent at Hunton while Campbell was a partner there,[12] contends that disqualification is unnecessary because Campbell did not receive any confidential information regarding Streetspace. In support of this contention, Defendant relies on the following evidence:

(1) Testimony from Campbell that in the summer of 2000, he transferred from the Washington, D.C. office of Hunton to the McLean, VA office.[13] From 2000-2007, though he maintained his old phone number at the Washington, D.C. office so that clients could still reach him using that number, this number forwarded to his Virginia office, and he did not maintain an office in Washington, D.C. (Id. ¶¶ 3, 5.) The only matter on which Campbell collaborated with Coddington during his tenure at Hunton was on unrelated technology pertaining to hearing aids in a patent infringement litigation. (Id. ¶ 7.) He never discussed Streetspace with Coddington or any other attorney. (Id.) He never billed any time to Streetspace or accessed any Streetspace files. (Id. ¶ 8.) Nor did he attend any meeting where Streetspace was discussed. (Id.) His management responsibilities as a partner were limited to the cases he handled. (Id. ¶ 4.) The first time that Campbell heard of Streetspace was when Millennial engaged him to defend the present litigation. (Id. ¶ 10.)

(2) Testimony from Patrick Doody, who was a partner at Hunton from 2000 to 2007.[14] From 2001 to 2007 Doody worked a few offices down from Campbell at the Virginia Hunton office. (Id.) To the best of Doody's knowledge, Campbell never held any firm-wide management functions at Hunton, nor did he hold any office-wide management functions for the Virginia or D.C. offices. (Id. ¶ 4.) Doody never billed any time to Streetspace, attended meetings where Streetspace was discussed, or heard of Streetspace during his partnership at Hunton. (Id. ¶ 5.)

(3) Testimony from Kevin Duncan, who worked in the Virginia office of Hunton from 2000 to 2006.[15] During this time Duncan worked a few offices down from Campbell. (Id.) During Duncan's partnership at Hunton, Campbell did not hold any management functions for the Virginia or D.C. offices. (Id. ¶ 4.) Duncan never heard of Streetspace during his partnership at Hunton. (Id. ¶ 5.)

Upon review, on the basis of the evidence above, the Court finds that Defendant has carried its burden of demonstrating that Campbell did not receive confidential information regarding Streetspace from Hunton, and that disqualification is thus unnecessary. Campbell's Declaration

---

[12] (See Disqualification Opp'n at 10.)

[13] (Declaration of Christopher C. Campbell Opposing Streetspace's Motion to Disqualify ¶ 3, Docket Item No. 31-1.)

[14] (Declaration of Patrick A. Doody in Support of Millennial Media's Opposition to Streetspace's Motion to Disqualify ¶ 3, hereafter, "Doody Decl.," Docket Item No. 31-3.)

[15] (Declaration of Kevin Todd Duncan in Support of Millennial Media's Opposition to Streetspace's Motion to Disqualify ¶ 3, hereafter, "Duncan Decl.," Docket Item No. 31-4.)

1 states unambiguously that he billed no time to Streetspace and had not heard of it until the present
2 litigation.[16] The Declarations of Doody and Duncan provide further support for the contention that
3 Streetspace was not discussed among partners at the Virginia office, and Campbell did not hold any
4 managerial functions that would cause him to obtain confidences about cases beyond his own.[17] In
5 response to this evidence Plaintiff offers nothing beyond the fact that Campbell was a partner in the
6 intellectual property group, worked on one occasion with Coddington on another project, and could
7 theoretically have accessed confidential documents if he had tried.[18] None of this evidence supports
8 the contention that Campbell obtained confidences regarding Streetspace while at Hunton, let alone
9 rebuts his unequivocal assertion that he did not.[19] Thus, in light of the evidence provided by
10 Defendant that Campbell did not receive any confidential information regarding Streetspace, and in
11 light of Plaintiff's failure to offer any contradictory evidence, the Court finds that disqualification of
12 Cooley is not warranted.
13 Accordingly, the Court DENIES Plaintiff's Motion to Disqualify Counsel.

14 **C.  Motion to Stay**

15 At issue is whether these proceedings should be stayed pending the PTO reexamination of
16 the '969 Patent.
17 A district court has discretion to stay an action before it pending the resolution of
18 independent proceedings which bear upon the case. See Leyva v. Certified Grocers of Cal., Ltd.,
19 593 F.2d 857, 863-64 (9th Cir. 1979). This authority includes the discretion to stay an action
20 pending the outcome of reexamination proceedings at the PTO. See In re Cygnus Telecomm. Tech.,

---

[16] (Campbell Decl. ¶ 10.)

[17] (Doody Decl. ¶¶ 4-5; Duncan Decl. ¶¶ 4-5.)

[18] (See Coddington Decl.; Coddington Reply Decl.)

[19] The Court observes that if disqualification was required based merely on having access to confidential records through a centralized document management system, then disqualification of every attorney within a firm would be required where, as here, Plaintiff contends that all attorneys and staff throughout the United States could access the system. (See Coddington Decl. ¶ 15.) Such a broad rule would be inconsistent with the directive of Adams to "engage in a fact-based examination." 86 Cal. App. 4th at 1328.

6

1 LLC, Patent Litig., 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005). Indeed, "there is a liberal policy
2 in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or
3 reissuance proceedings." ASCII Corp. v. STD Enter. USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal.
4 1984). When determining whether to stay proceedings, a court should consider "(1) whether a stay
5 would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether
6 a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete
7 and whether a trial date has been set." Cygnus, 385 F. Supp. 2d at 1023.

8 Upon review, the Court finds that a stay is warranted in this case pending resolution of the
9 PTO reexamination process. First, the Court finds that there is no clear prejudice or tactical
10 disadvantage to Plaintiff from staying the action. Though Plaintiff has asserted that a delay will
11 prejudice its interest, it has not asserted any basis for prejudice other than the delay inherent
12 whenever a proceeding is stayed.[20] Second, the Court finds that the results of reexamination are
13 likely to simplify the issues for trial. The PTO's first Office Action with regards to the '969 Patent
14 was to reject all twenty-three of its claims as invalid.[21] Though this determination is not final,
15 cancellation or modification of patent claims clearly has the potential to simplify the issues for trial.
16 Finally, the Court finds that the stage of this litigation weighs heavily in favor of a stay, as no trial
17 date has been set and discovery has not even commenced. Thus, each of the Cygnus factors favors a
18 stay in this case.

19 Accordingly, the Court GRANTS Defendants' Motion to Stay Proceedings.

20 **C.    Conclusion**

21 The Court DENIES Plaintiff's Motion to Disqualify Counsel.

22 The Court GRANTS Defendants' Motion to Stay Proceedings. This action is STAYED.

---

[20] (See Opposition of Plaintiff Streetspace, Inc. to Defendant's Motion to Stay Proceedings Pending Reexamination at 8-9, hereafter, "Stay Opp'n," Docket Item No. 82.)

[21] (See Office Action at 3.)

In light of the stay, the Court DENIES as premature Defendants' Motion to Dismiss. Defendants may refile their Motion or file an amended motion to dismiss after the stay is lifted.

The Clerk of Court shall administratively close this case. Within ten (10) days of the conclusion of reexamination proceedings, either party may move to reopen the case and to lift the stay. [22]

Dated: February 1, 2012

*JAMES WARE*
United States District Chief Judge

---

[22] In light of this Order, the Court VACATES the Case Management Conference scheduled for January 30, 2012. Accordingly, the Court DENIES as moot Defendants' Motion for Relief from Case Management Schedule (see Docket Item No. 94), and Defendant Nokia Corp.'s Motion to Appear by Telephone (see Docket Item No. 109).

8

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Cheryl A. Sabnis csabnis@kslaw.com
Christopher C. Carnaval ccarnaval@kslaw.com
Christopher Charles Campbell ccampbell@cooley.com
David Heskel Ben-Meir david.ben-meir@alston.com
Douglas E Olson dougolson@sandiegoiplaw.com
Douglas J. Kline dkline@goodwinprocter.com
Frank V. Pietrantonio fpietrantonio@cooley.com
James Vincent Fazio jamesfazio@sandiegoiplaw.com
John Shepherd Kyle kylejs@cooley.com
Justin Edwin Gray jegray@foley.com
Kurt M Kjelland Kkjelland@goodwinprocter.com
Lei Sun leisun@sandiegoiplaw.com
Luann Loraine Simmons lsimmons@omm.com
Matthew Burt Lowrie mlowrie@foley.com
Michael Ira Neil kmoscinski@neildymott.com
Reuben Ho-Yen Chen rchen@cooley.com
Shawn Edward McDonald SEMcDonald@foley.com
Susan A Kim skim@kslaw.com
Timothy J. Rousseau trousseau@goodwinprocter.com
Trevor Quick Coddington trevorcoddington@sandiegoiplaw.com
William A. Meunier wmeunier@goodwinprocter.com

Dated:  February 1, 2012                               **Richard W. Wieking, Clerk**

                                                       **By:     /s/ JW Chambers**
                                                       **Susan Imbriani**
                                                       **Courtroom Deputy**